IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

FIREMAN'S FUND INSURANCE COMPANY                    PLAINTIFF

v.                                           Civil No. 1:17-CV-0195-GHD-DAS

REGIONS INSURANCE, INC., *et al.*                    DEFENDANTS

**MEMORANDUM OPINION GRANTING DEFENDANT
PERFORMANCE INSURANCE SERVICES' MOTIONS TO COMPEL ARBITRATION**

Before this Court is Defendant Performance Insurance Services' motions to dismiss, or, in the alternative compel arbitration [11, 22]. In this case, Plaintiff Fireman's Fund Insurance Company ("FFIC") alleges the Defendants failed to provide certain required documents to an insured, and, as a result FFIC was forced to pay out an insurance claim in excess of the stated limits of the insured policy. One of the Defendants, Performance Insurance Services ("Performance") argues that FFIC's claims against it should be dismissed, or alternatively arbitrated pursuant to arbitration provisions contained in the agreements between the two.

Defendant Regions Insurance, Inc. ("Regions") has filed an indemnity cross–claim against Performance. Performance argues that this cross–claim should also be dismissed, or alternatively, submitted to arbitration. The Court finds that these motions should be granted with respect to compelling arbitration but denied with respect to dismissing the claims.

**Factual and Procedural Background**

In 2014, nonparty Dustin Roberts consulted with Casey Johnson, an employee of Regions, about obtaining insurance coverage for his business. Compl. ¶¶ 6–7. At that time, Regions was

1

acting as a producer for Performance selling FFIC insurance policies, among other insurance products. Compl. ¶ 7. Johnson secured a policy for Roberts through FFIC that included coverage for several vehicles Roberts owned. *Id.* ¶¶ 7–8. By the terms of the policy, coverage included a single limit of $500,000 in non–stacking[1], uninsured motorists coverage for each vehicle. *Id.* ¶ 8.

On February 2, 2015, while the policy was in effect, Roberts' wife, Tiffany, and his daughter, Kaylee, were driving a vehicle insured under the policy, when they were struck by an uninsured driver. *Id.* ¶¶ 10-12. Tiffany was killed, and Kaylee was severely injured. *Id.* ¶ 12.

Roberts filed an insurance claim with FFIC. *Id.* ¶ 13. Because the policy provided for non–stacking coverage, FFIC initially believed that maximum recovery amount was $500,000. However, while investigating the claim, FFIC discovered that Roberts was unaware of the difference between stacking and non–stacking coverage. FFIC also discovered that Roberts had not executed an uninsured motorists coverage election form. *Id.* ¶ 14. Mississippi law requires that before issuing a policy that provides for non–stacking coverage, the insurer must inform the insured about the limits of non–stacking coverage and obtain an election form from the insured. Miss. Code Ann. § 83-11-102.

Roberts eventually filed suit against FFIC, asserting FFIC's failure (through its agents and subagents) to comply with § 83-11-102 meant that he was entitled to stack the coverage of all of his vehicles. *Id.* ¶ 15. Despite the fact the policy provided only $500,000 of coverage, FFIC believed they could not rely on the policy language, and therefore settled with Roberts for $3,132,946.00. *Id.* ¶ 16–17.

---

[1] Stacking uninsured motorist insurance coverage is a practice that allows an insured to combine "the limits of each vehicle covered under an insurance policy to pay for damages sustained in an accident." *Harrison v. Allstate Ins. Co.*, 662 So. 2d 1092, 1093 fn. 1(Miss. 1995). For example, an insured with a policy that provides $10,000 in uninsured motorist bodily injury coverage for two vehicles could "stack" the coverage of each vehicle for a maximum recovery amount of $20,000 for a single accident, if the policy so allows. *Id.*

FFIC now brings claims for negligence, negligent training and supervision, breach of contract, and breach of fiduciary duties against Defendants, alleging that Johnson (and therefore Regions, and therefore Performance) failed to discuss the uninsured motorists coverage with Roberts and obtain the election form as required by Mississippi law. As a result, FFIC argues, it was forced to pay Roberts $2,632,946 more in insurance proceeds than it should have under the policy. Regions subsequently filed an indemnity cross–claim against Performance arguing that Performance must indemnify Regions for any damages it ultimately pays to FFIC.

Performance filed a motion to dismiss, or in the alternative, compel arbitration of FFIC's claims against it, arguing that the arbitration provisions in the agreements executed between FFIC and Performance requires the parties to arbitrate this dispute. Performance also filed a motion to dismiss, or in the alternative, compel arbitration of Regions' cross–claim, arguing that Regions cross–complaint failed to state a claim for relief, or alternatively, Regions should be forced to arbitrate its indemnity cross–claim. The Court now addresses those motions in turn.

## Analysis

1. **Performance's Motion to Dismiss, or in the Alternative Compel Arbitration of FFIC's claim**

The Court generally assesses whether the parties agreed to arbitrate the dispute in question using a two–step process: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *See Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 176 (5th Cir. 2016). If the Court finds that the parties have a valid agreement to arbitrate and that the dispute is within the scope of the arbitration agreement, the Court generally examines whether any legal constraints foreclose arbitration of those claims. *See Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 396 (5th Cir. 2006) (citing *Mitsubishi Motors Corp.*, 473 U.S. at 628, 105 S. Ct. 3346)). Courts must "apply the federal policy favoring

3

arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope, but . . . do not apply this policy when determining whether a valid agreement exists." *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008). *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (citing *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)); *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002). The determination of whether a party is bound by an arbitration agreement is included within the broader issue of whether the parties agreed to arbitrate. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355 (5th Cir. 2003) (citing *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 95 (2d Cir. 1999)). "The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts—no more and no less." *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) (citing 9 U.S.C. § 2); *see Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998) ("[a]rbitration is a matter of contract between the parties").

Performance and FFIC do not dispute that a valid arbitration agreement exists. *See* Pl.'s Resp. at pp. 1–2. Rather, FFIC argues that the scope of the arbitration provision does not apply to the claims it makes against Performance.

The Fifth Circuit distinguishes between "broad" and "narrow" arbitration clauses. *Baudoin v. Mid–Louisiana Anesthesia Consultants, Inc.*, 306 F. App'x 188, 192 (5th Cir. 2009) (citing *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754–755 (5th Cir. 1993)). Where the clause is broad, "the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause." *Hornbeck*, 981 F.3d at 754 (citing *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 n. 10 (5th Cir. 1985)). But if the clause is narrow, the

court should determine whether the dispute falls within the clause before it refers the matter of arbitration. *Id.* Where the scope of the clause is "fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." *Mar–Len of La., Inc. v. Parsons–Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985).

" 'Narrow' arbitration clauses only require arbitration of disputes 'arising out of' the contract," while " 'broad' arbitration clauses govern[] disputes that 'relate to' or 'are connected with' the contract." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). Thus, a broad arbitration clause is not "limited to claims that literally 'arise under the contract' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.*

The Court, therefore, must examine the language of the arbitration provisions to determine their scope. The Court initially notes that the relationship between FFIC and Performance was governed by two agreements: a General Agency Agreement, [11-2]; and a Wholesale Agency Agreement [11-3]. The two agreements are similar. As the Court understands it, the General Agency Agreement granted Performance the right to sell FFIC policies directly to insureds while the Wholesale Agency Agreement gave Performance the right to sell FFIC policies through other retail insurance providers (such as Regions).

In any case, the arbitration clauses in both agreements reads:

> If a dispute arises concerning this Agreement or concerning the purposes and/or implementation of this Agreement, or the rights, duties or authorities established under this Agreement, that you and we cannot informally resolve, the dispute will be submitted to binding arbitration. Either party may demand arbitration by sending written notice to the other describing the issue(s) to be arbitrated.

General Agency Agreement, at p. 10. Wholesale Agency Agreement, at p. 14. The Court finds these clauses contain "broad" language. They require arbitration of disputes not only concerning

the Agreements and rights under the Agreements itself but also disputes concerning the "purpose" and "implementation of the Agreement[s]." *Id.* Moreover, as even FFIC admits, "concerning" is synonymous to "relating to." *See* Pl.'s Memo. in Opp. [19] at p. 4. This is language that embraces "all disputes between the parties having a significant relationship to the contract." *Pennzoil*, 139 F.3d at 1067. Because the clauses are broad, it is the arbitrator that must determine whether the scope of FFIC's dispute with Performance fall within the scope of agreement.

FFIC further urges this Court to deny Performance's motion because FFIC has pending claims against other parties that will remain in this case. The Court finds no reason to allow FFIC to sidestep the arbitration clauses within these agreements simply because it has sued additional parties. "Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute, but not to the arbitration agreement." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20, 103 S. Ct. 927, 939, 74 L. Ed. 2d 765 (1983). FFIC's claims against Performance must be submitted to arbitration for the arbitrator to determine whether they fall win the scope of the Agreements.

The Court must now determine whether it should dismiss FFIC's claims against Performance or stay those claims pending arbitration. "While the relevant section of the Federal Arbitration Act provides that a court 'shall . . . stay' an action in which claims are referable to arbitration, 9 U.S.C. § 3, the Fifth Circuit has held that dismissal is appropriate 'when *all* of the issues raised in the district court must be submitted to arbitration.' " *Hudson v. Windows USA*, LLC, No. 3:16-CV-597-DPJ, 2017 WL 13055251 at *3 (S.D. Miss. April 5, 2017) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original)). However, dismissal is not required. *See Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 311 n.

9 (5th Cir. 2003)("In other words, *Alford* held merely that dismissal was not an abuse of discretion."). In light of FFIC's remaining claims against Regions, the Court finds it prudent to stay, rather than dismiss, the case.

### 2. Performance's Motion to Dismiss, or in the Alternative Compel Arbitration of Regions' cross–claim

Performance's motion against Regions may be divided into two parts: first, a motion to compel arbitration, and second, a motion to dismiss for failure to state an indemnification claim. Because the Court finds that the claim should be submitted to arbitration, it does not decide the indemnification issue.

Performance seeks to compel arbitration for Regions' cross–claim against it. The Brokerage Agreement between Performance and Regions does not contain an arbitration provision. Rather, Performance argues that the arbitration provision in Performance's Wholesale Agency Agreement with FFIC should be applied to Regions under a theory of direct–benefit estoppel.

A third–party non–signatory may be bound to an arbitration provision under "[o]rdinary principles of contract and agency law," such as estoppel. *Bridas*, 345 F.3d at 356. However, estoppel is "an extraordinary remedy and should only be invoked to prevent unconscionable results." *Sealey v. Johanson*, 175 F. Supp. 3d 681, 686-87 (S.D. Miss. March 29, 2016)

"Direct–benefit estoppel involve[s] non–signatories who, during the life of the contract, have embraced the contract despite their non–signatory status, but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) (quoting *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006)). Direct benefit estoppel may be applied to "bind a non–signatory to an arbitration agreement when the non–signatory knowingly exploits the contract containing the

arbitration clause and obtains a direct benefit from that contract." *Noble Drilling Servs.*, 620 F.3d at 473.

To "knowingly exploit" a contract, the non–signatory must have actual knowledge of the contract containing the arbitration clause. *Id.* "A non–signatory's generalized sense that two contracting parties have a course of dealing will not satisfy this requirement." *Pershing, L.L.C. v. Bevis*, 606 F. App'x 754, 758 (5th Cir. 2015) (citing *Noble Drilling Servs.*, 620 F.3d at 473)). "Benefits are 'direct' if they 'flow[ ] directly from the agreement . . . . By contrast, the benefit derived from an agreement is indirect where the non–signatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself.'" *Pershing*, 606 F. App'x at 758 (quoting *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001)).

Regions knew of the existence of the Wholesale Agency Agreement. *See* Regions' Am. Crossclaim ¶ 5. Through the Brokerage Agreement, Regions was allowed to provide FFIC policies to its customers on through Performance, and so Regions knew of the agreement giving Performance the authority to bind FFIC through the policies.

Regions also directly benefited from the Wholesale Agency Agreement. The Wholesale Agency Agreement gave Performance the authority to act as an agent for FFIC. It was through this agreement that Regions was able to place FFIC insurance policies for Performance in exchange for commissions. That benefit was derived directly from FFIC's agreement with Performance. Therefore, the arbitration provision may be applied to Regions.

Because, as discussed above, the arbitration clause in the Wholesale Agency Agreement is "broad," it is the arbitrator who must determine whether the Regions' cross–claim falls within the

scope of the clause. The claim should be submitted to arbitration, and the Court need not address whether the cross–complaint fails to state a claim for indemnity.

## Conclusion

The arbitration provisions in both the General and Wholesale Agency Agreements between FFIC and Performance are "broad". It is therefore within the province of the arbitrator to determine whether FFIC's dispute with Performance fall within the scope of the clauses. FFIC's claims against Performance should be submitted to arbitration.

Further, Regions directly benefited from the Wholesale Agency Agreement between FFIC and Performance. The arbitration provision, therefore, reaches to Regions' cross–claim against Performance, and that claim should also be submitted to arbitration.

An order in accordance with this opinion shall issue.

This, the 3rd day of April, 2018.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE